UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

REBECCA L. DYGERT,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-325
(GTS/VEB)

## I. INTRODUCTION

In October of 2005, Plaintiff Rebecca L. Dygert applied for disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she is unable to work due to a variety of physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, through her attorneys, DeSantis & DeSantis, Michael V. DeSantis, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On July 23, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on October 5, 2005, alleging disability beginning on September 20, 2004. (T at 53A).[1] The application was denied initially on February 15, 2006. (T at 27-30). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 10, 2008, in Utica, New York, before ALJ Gerald J. Ryan. (T at 302). Plaintiff appeared with her attorney and testified. (T at 302-326).

On July 9, 2008, the ALJ issued a decision denying Plaintiff's applications. (T at 11-22). Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on January 21, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

Plaintiff, through counsel, commenced this action on March 20, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on August 12, 2009. (Docket No. 11). Plaintiff filed an Amended Brief in support of her action on September 25, 2009. (Docket No. 13). Defendant filed a Brief in opposition on November 5, 2009. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied and Plaintiff's motion be granted.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

### III. DISCUSSION

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2009.  He further concluded that Plaintiff had not engaged in substantial gainful activity since September 20, 2004, the alleged onset date. The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Act: cerebral vasculitis, obesity, diabetes mellitus, hypertension, status-post acute CVA/TIA, anxiety, and depression. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 14).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with some exertional and non-exertional limitations. (T at 16).  He found that Plaintiff was unable to perform her past relevant work. (T at 20).  Considering Plaintiff's

age (46 years old on the alleged onset date, 49 years old on the date of the ALJ's decision), education (at least high school), and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 20-21).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from the alleged onset date through the date of his decision. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on January 21, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. However, the brief submitted by Plaintiff's counsel is poorly organized. Legal arguments are mixed together with the factual summary, making it difficult to discern the exact nature and basis of Plaintiff's arguments. Moreover, the brief is not divided into sections separately treating each argument, as expressly required by General Order No. 18, and lacks supporting citations to the relevant pages in the administrative record. *Plaintiff's counsel is admonished to review General Order No. 18 and to conform future briefs to its clear requirements.*

It appears that Plaintiff offers three (3) principal arguments in support of her position. First, Plaintiff contends that the ALJ did not properly weigh the medical opinions when determining her RFC. Second, she contends that the ALJ erred in assessing her credibility. Third, Plaintiff argues that the ALJ improperly relied upon the Grids at step five of the sequential evaluation process. Each argument will be addressed in turn.

     **a.**    **RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

The ALJ determined that Plaintiff retained the RFC to perform light work, except transferring frequently between sitting and standing/walking, flexing/extending the knees fully or frequently to operate foot/leg controls, or climbing frequently. (T at 16). In addition, although the ALJ found Plaintiff could perform light work, he also concluded that she could not remember or execute highly detailed instructions or tasks accurately without occasional reminders. (T at 16). For the following reasons, this Court finds that the ALJ's RFC determination was not supported by substantial evidence and that a remand is required because the ALJ failed to properly apply the treating physician's rule.

Dr. Ami Milton, Plaintiff's treating rheumatologist, opined that Plaintiff was "completely disabled from work due to the ongoing fatigue, difficulty with memory and

concentration." (T at 234). The ALJ discounted this finding, noting that the issue of whether Plaintiff was disabled was reserved to the Commissioner and concluding that the balance of Dr. Milton's assessment was "overstated in view of the limited extent of quantified abnormal findings recorded by the doctor on that date . . . ." (T at 19).

In the Second Circuit, an ALJ has an affirmative duty to fully and fairly develop the record sua sponte, even when a claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996); see also 20 C.F.R. §§ 404.1512(d), 416.912(d) (describing the Commissioner's duty to develop a claimant's medical history for at least the twelve-month period prior to the disability application); 20 C.F.R. § 404.1512(e)(1), 416.912(e)(1) (describing the Commissioner's duty to seek additional information from a treating source when the evidence provided is inadequate to make a determination).

Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999)(citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998)) Failure to re-contact the treating physician is a basis for remand. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); Medina v. Barnhart, No. 03-CV-0079, 2004 WL 487310, at *10 (S.D.N.Y. Mar. 11, 2004) ("The ... failure in this case to provide 'good reasons' for discounting the opinion of plaintiff's treating physician and to fully develop the record preclude[s] the Court from concluding that the finding of no disability is supported by 'substantial evidence' and should be upheld.").

In this case, Dr. Milton's treatment notes indicated a diagnosis of cerebral vasculitis and described significant difficulty with memory and concentration skills, cognitive problems, "generalized arthralgias, myalgias, and significant stiffness," "ongoing fatigue," "inability to do any repetitive motions with the arm," and leg pain. (T at 234, 237, 238). Dr. Milton also completed a physical capabilities assessment, in which she indicated that Plaintiff could not work an 8-hour day, could stand/walk no more than 15 minutes at a time, drive for less than a hour, and sit for 1-5 hours. (T at 298). Dr. Milton assessed that Plaintiff could lift up to 20 pounds occasionally. (T at 298).

If the ALJ felt that Dr. Milton's disability assessment was in conflict with her treatment notes or otherwise inconsistent with the evidence, he had a duty to re-contact her before making his decision. Valerio v. Commissioner of Social Sec., No. 08-CV-4253, 2009 WL 2424211, at *11 (E.D.N.Y. Aug. 6, 2009)("Given the ALJ's duty to develop the record sua sponte, the Appeals Council may not reject the treating physician's conclusions based solely on a lack of clear medical evidence or inconsistency without first attempting to fill the gaps in the administrative record."); Rosa, 168 F.3d at 77 (noting that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record). Moreover, a careful reading of Dr. Milton's treatment notes tends to undermine the ALJ's suggestion that the notes contradict her overall assessment, suggesting that the ALJ may have overemphasized the fact that Dr. Milton opined that Plaintiff was disabled. In other words, the ALJ appears to have been overly influenced by Dr. Milton's opinion as intruding upon an issue reserved to the Commissioner without fully considering the evidence underlying that opinion.

The ALJ's error in this regard was compounded by the fact that other evidence in

the record supports Dr. Milton's assessment. Dr. Santana, the treating neurologist, noted a decrease in sensation in both of Plaintiff's feet, right more than left. (T at 288). He also diagnosed cerebral vasculitis, status-post left carotid endarterectomy, some diabetic peripheral neuropathy, depression, and arterial hypertension. (T at 288). Dr. Kristen Barry, the psychiatric consultative examiner, noted that Plaintiff had difficulty rising from a seated position and had "some" poor balance. (T at 252). Although Dr. Berton Shayevitz, the physical consultative examiner, did not note any problems standing up or with balance (T at 259), he did opine that Plaintiff's prognosis was "poor." (T at 260). Specifically, Dr. Shayevitz concluded that Plaintiff was "moderately to somewhat above moderately limited by her knees in mobility and . . . inability to climb, run, jump, hop, and skip." (T at 260). He found that Plaintiff would have difficulty performing tasks that involved "a lot of sitting and getting up alternately or climbing." (T at 260). Dr. Shayevitz also indicated that Plaintiff "certainly" had episodes of cerebrovascular disease. (T at 260).

The ALJ discounted Dr. Shayevitz's assessment, finding that it was vague and self-contradictory. (T at 18). However, the ALJ did not adequately consider the fact that Dr. Shayevitz's findings provided further support for Dr. Milton's assessment. Thus, it was error to consider Dr. Shayevitz's assessment in insolation and (in like manner) to reject Dr. Milton's determination without considering the fact that it was buttressed by Dr. Shayevitz's conclusions. This had the practical effect of placing the ALJ in the position, by inference, of offering his own medical opinions–conduct prohibited by the Regulations. It is well settled in the Second Circuit, that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly

submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

The ALJ afforded "substantial weight" to the mental limitations assessed by Dr. Barry, the consultative psychiatric examiner. However, an opinion based upon a single examination deserves limited weight. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."). Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the treating physician's assessment. Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998).

For the reasons stated above, this Court finds that a remand is necessary for further development of the record. In particular, the ALJ should re-contact Dr. Milton to obtain additional information and/or clarification concerning her assessment. In addition, in considering whether Dr. Milton's determination is entitled to controlling weight, careful consideration should be given to other evidence in the record tending to support that determination.

**b.     Credibility**

Credibility issues are generally associated with complaints of pain.  Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to

which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that she experiences frequent headaches, which make it very difficult to think and concentrate. (T at 306, 311, 324). She is often fatigued due to sleep difficulties. (T at 306, 324). She has trouble finding words, thinking clearly, and communicating. (T at 306). Plaintiff stated that she is often forgetful (*e.g.* leaving stove burner on) and tends to lose her balance and fall. (T at 306). Plaintiff testified that she can lift 10-15 pounds and walk/stand for approximately 30 minutes. (T at 310). Her vision is

frequently blurred. (T at 310).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the types of symptoms alleged, but that her statements concerning the intensity, persistence, and (in particular) the limiting effects of the symptoms were not fully credible. (T at 17).

This Court finds the ALJ's credibility assessment flawed in two important respects. First, the assessment is tainted by the ALJ's failure to develop the record with regard to Dr. Milton's opinion. As discussed above, Dr. Milton opined that Plaintiff was "completely disabled from work due to the ongoing fatigue, difficulty with memory and concentration." (T at 234) Although Dr. Milton is not a psychiatrist, she is a trained medical professional and did have the opportunity to observe Plaintiff in a clinical setting on a regular basis. For the reasons stated above, the ALJ erred by failing to re-contact Dr. Milton before discounting her assessment. This error likewise affected the ALJ's consideration of Plaintiff's credibility, as Plaintiff's credibility was bolstered by Dr. Milton's assessment.

Second, the ALJ made no mention of Plaintiff's good work record. Plaintiff received her nursing degree in 1991 and worked as a staff nurse and a teacher until she suffered a series of strokes in August of 2000. (T at 314-16). Plaintiff returned to work in October of 2000 as a medical officer at the Oneida County Jail. (T at 316-17). After a year in that job, Plaintiff left work for a brief period to provide medical care to her husband, returning to work in October 2001 for a health care company. (T at 318). Plaintiff stopped working in September of 2004 because of severe headaches and difficulty concentrating. (T at 319).

The ALJ's failure to consider this good work record in assessing Plaintiff's credibility

was an error justifying remand. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); see also Wilber v. Astrue, No. 07-CV-56S, 2008 WL 85037, at *3 (W.D.N.Y. Mar. 28, 2008) (remanding, in part, for failure to consider plaintiff's good work history of over twenty years in his credibility analysis); SSR 96-7p (providing that ALJ is to consider prior work record when assessing credibility).

This Court accordingly recommends a remand for reconsideration of the Plaintiff's credibility, with explicit consideration and enhanced credibility being provided based upon her work record.

### c. Use of the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained

>in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, applying the framework of the Grids, the ALJ found that Plaintiff was not disabled. (T at 21). However, the ALJ's consultation of the Grids was based upon his RFC assessment. (T at 20-21). Thus, the step 5 analysis was necessarily impacted by the ALJ's failure to adequately develop the record and consider Plaintiff's credibility as discussed above. As such, the analysis should be revisited on remand following reconsideration of the issues identified above.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

Dated: September 7, 2010
Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

September 7, 2010

Victor E. Bianchini
United States Magistrate Judge